UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

F I L E D
JACKSONVILLE, FLORIDA

FEB 1 8 2004

CLERK, U. S. BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA

| | | |
|---|---|---|
| In re | ) | |
| BRUCE L. JENNINGS, et al., | ) | |
| | ) | |
| Debtors. | ) | Case No.: 03-04926-3F1 |
| | ) | |
| BRANDON JAMES MAXFIELD, et al. | ) | |
| Plaintiffs, | ) | Adversary No. 03-473 |
| v. | ) | |
| BRYCO ARMS, et al., | ) | |
| Defendants. | ) | |

## SUPPLEMENT TO MOTION TO CONSOLIDATE

Plaintiff, Brandon James Maxfield ("Maxfield"), supplements his motion to

consolidate this adversary proceeding with adversary proceeding numbers 03-345 and 03-203

by incorporating his response to the motion for summary judgment filed by the Nevada

Trusts in Adversary No. 03-203 (copy attached, without exhibits).  Maxfield's response to

the summary judgment motion summarizes in more detail the nature of claims at issue in

each of these adversary proceedings to show that they are, in fact, identical and should be

consolidated.

**STUTSMAN & THAMES, P.A.**

By _____
             Richard R. Thames

Florida Bar Number 0718459
121 W. Forsyth Street, Suite 600
Jacksonville, Florida  32202
(904) 358-4000
(904) 358-4001 (Facsimile)

Attorneys for Brandon James Maxfield

## Certificate of Service

I certify that a copy of the foregoing was furnished by mail to Ned R. Nashban, Esq., Quarles & Brady, LLP, 1900 Glades Road, Suite 355, Boca Raton, Florida 33431; Benjamin R. Norris, Esq., Quarles & Brady Streich Lang, LLP, Two North Central Avenue, Phoenix, Arizona 85004-2391; Douglas H. Morford, Esq., Morford & Whitefield, P.A., 4040 Woodcock Drive, Suite 202, Jacksonville, Florida 32207; Michael C. Hewitt, Esq., 380 Clinton Avenue, Unit C, Costa Mesa, California 92626; Joel Grist, Esq., Kenneth M. Brock, Esq., Grist & Brock, LLP, 915 Hill Park, Suite 301, Macon, Georgia 31201; Kenneth Marder, Esq., Taub & Marder, 450 Seventh Avenue, 37th Floor, New York, New York 10123; Peter A. Siddiqui, Esq., Ronald R. Peterson, Esq., Jenner & Block, LLC, One IBM Plaza, Chicago, Illinois 60611; Luca R. Bronzi, Esq., Hogan & Hartson, LLP, 1111 Brickell Avenue, Miami, Florida 33131; Locke E. Bowman, Esq., Jean MacLean Snyder, Esq., Macarthur Justice Center, University of Chicago Law School, 111 E. 60th Street, Chicago, Illinois 60637; Thomas H. Geoghegan, Esq., Despres, Schwartz & Geoghegan, 77 West Washington Street, Suite 711, Chicago, Illinois 60637; Joan Truman Smith, 145-42 115th Avenue, Jamaica, New York 11436; and to Thomas Johnson, Sr., 1387 Sunnyside Street, Far Rockaway, New Jersey 11691 on this *13* day of February, 2004.

_____
Attorney

50253

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | | |
|---|---|---|
| In re | ) | |
| | | |
| BRUCE LEE JENNINGS, et al., | ) | |
| | | Case No. 03-04926-3F1 |
| Debtors. | ) | |
| | | |
| _____ | ) | |
| | | |
| RKB INVESTMENTS, et al., | ) | |
| | | |
| Plaintiffs. | ) | Adversary No. 03-203 |
| | | |
| v. | ) | |
| | | |
| BRANDON JAMES MAXFIELD, et al., | ) | |
| | | |
| Defendants. | ) | |
| | | |
| _____ | ) | |

## DEFENDANT, BRANDON JAMES MAXFIELD'S INITIAL
## RESPONSE TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

Defendant, Brandon James Maxfield ("Maxfield"), submits this response to the motion for summary judgment filed by plaintiffs, the Kimberly K. Jennings Nevada Trust, the Bradley A. Jennings Nevada Trust and the Rhonda D. Jennings Nevada Trust (collectively, the "Nevada Trusts").

### Factual Background

This adversary proceeding seeks a determination that the Nevada Trusts and several of the co-plaintiffs are not liable to Maxfield or any other of the named defendants on

account of their relationship with Bruce Lee Jennings, Bryco Arms, Inc. ("Bryco") and B.L. Jennings, Inc. ("B.L. Jennings").

## The "Players"

Maxfield is the holder of a $24,774,146.53 judgment against Jennings, B.L. Jennings, and Bryco Arms in California for injuries he suffered when a handgun designed by Jennings, manufactured by Bryco Arms, and distributed by B.L. Jennings accidentally discharged, rendering Maxfield a quadriplegic.

Bryco is a Nevada corporation now headquartered in Southern California (Exhibit 4, pp. 13, 29-34). It manufactures cheap handguns commonly referred to as "Saturday Night Specials." Its guns are distributed exclusively through B.L. Jennings, a company owned by Bruce Lee Jennings ("Jennings"). Jennings is the son of George Jennings, who founded Raven Arms, the brother of Gail Davis, who founded Davis Arms, and the father of most of the beneficial shareholders of Phoenix Arms. He previously operated two other gun manufacturing companies, Jennings Firearms, Inc. and CalWestco, Inc.

Jennings himself is no stranger to litigation. His companies have been the target of numerous lawsuits over the years by persons injured by the accidental discharge of Jennings' firearms and by numerous municipalities and other organizations trying to rid the streets of cheap handguns.

To protect his "empire," Jennings utilizes a variety of legal entities and trusts to keep the money one step ahead of creditors. For example, he uses Bryco Arms to manufacture the handguns. Bryco's guns are in turn sold exclusively through B.L. Jennings, an entity owned

-2-

solely by Jennings. Jennings sets the prices at which the guns are sold to B.L. Jennings, and rarely is any excess money left in Bryco Arms. Instead, B.L. Jennings loans money to Bryco Arms on an "as needed" basis. The stock in Bryco was purportedly owned by the Nevada Trusts until May of 1998 when, in the face of litigation, the stock was transferred to Janice Jennings for $60,000 (Exhibit 4, p. 21).[1]

B.L. Jennings operates similarly, although its stock was issued directly to Bruce Jennings. When the company accumulates excess funds, those moneys are distributed out to Bruce Jennings, who in turn transfers the majority of the money back to the corporation in the guise of a secured loan. This way, Jennings has a mechanism for keeping control of the business and its assets should a judgment ever be rendered against the corporation.

The relationship among Jennings, Bryco and B.L. Jennings was so symbiotic to convince one judge that the corporate distinction between them should be disregarded entirely:

> I'm prepared to rule that for this case, Bryco, B.L. Jennings and Bruce Jennings are essentially one and the same. It was first of all, it was stipulated that any negligence on the part of Bruce Jennings, in this case responsibility, however you want to term it, it was likewise the responsibility of Bryco Arms. *And I believe that the relationship between Bryco Arms, B.L. Jennings and Bruce Jennings is so intimately intertwined that they are one and the same.*
>
> Comments of Judge John Kraetzer, Trial Proceedings, Alameda County Superior Court, May 12, 2003, Vol. 21, p. 3647, lns. 11-20 (emphasis added) (Exhibit 7).

---

[1] Maxfield was injured in 1994, at least four years prior to the stock transfer.

Jennings' artificial use of corporate entities to conduct his personal affairs is perhaps best illustrated by examining his relationship with RKB Investments ("RKB"), an entity purportedly owned by the Kimberly K. Jennings California Trust, the Bradley A. Jennings California Trust and the Rhonda D. Jennings California Trust (collectively, the "California Trusts"). Distributions flow to RKB from Bryco Arms as "rent" and from indirect distributions from Bryco to B.L. Jennings to Jennings to RKB. Once there, however, the money is used exclusively for Jennings' personal benefit.

For example, RKB was used to purchase a $6,000,000 home in Newport Beach, California, where Bruce and Anna Leah lived until approximately February of 2002:

> Q    You mentioned the 10 Shore View property. That property was owned by RKB Investments, correct?
>
> A    It was titled to RKB Investments. It was paid for by my personal money, which, or course, was also Janice's (sic) personal money.
>
> > Continued Rule 2004 Exam. of Bruce Lee Jennings, Oct. 1, 2003, p.47, lns. 1-5 (Exhibit 6).

RKB was also used to acquire Jennings' prior residence in Newport Beach, California (Exhibit 6, Vol. II, p. 57). Two million one hundred thousand of the purchase price was advanced by Jennings personally, with title being taken in the name of RKB. Jennings also advanced $1.5 million to RKB to purchase the facilities from which Bryco conducts business (Exhibit 6, Vol. II, p. 58).

-4-

The accounting for the money which Jennings advanced to RKB has purposely been left vague so Mr. Jennings could recharacterize the "investments" to his liking as circumstances warrant:

> Q    And the money that you put in personally to RKB, was that a loan or an investment or a gift to your children?
>
> A    It was not a gift. I don't know how to properly characterize it, but I could only explain that the money was placed into RKB's bank account, or the money was used to purchase the property and I simply instructed the bank to deed the property to RKB Investments. I'm not sure. That was many years ago.
>
> Q    Were there any loan agreements between you and RKB for the money that you put in to RKB?
>
> A    There was no formal documentation, but it was never intended that there was a gift or transfer of that money to them. It was intended that the money be returned to me and/or the property be returned to me in the future.
>
> * * *
>
> Q    I want to ask you a couple questions about your intent in placing the money - - - in fronting the money for the purchase of the 10 Shoreview property. If RKB had retained that asset and sold it at a profit, who would be entitled to the premium over the purchase price?
>
> A    Well, seeing as how that didn't happen, I really wouldn't be able to answer that question. But what I would say is we would sit down and discuss how that would affect taxes through my accountant.
>
> Q    So there was no real understanding, then, as to how that was - - your investment in RKB was going to be

treated for tax purposes or otherwise at the time you made the contributions, correct?

A       Well, I didn't say that it was an investment in RKB. What I said was I simply took and placed the title of the property and/or possibly loaned the money, and I said that I couldn't properly characterize it as either.

It was a - - kind of an open-structured agreement that would be decided as the circumstance would warrant. For example, if the property got sold and it lost money, there may be a decision made on whose loss was it; if it was sold and made money, it would be decided whose profit it would be. Or if I just simply passed on and it was inherited to them, it would be a different classification. So the open concept of the transfer of my funds for the real estate project was never cemented in any fashion.

Continued Rule 2004 Examination of
Bruce Lee Jennings, October 1, 2003
pp. 49-51 (Exhibit 6).

In October of 2002, during a break in the deposition of Janice Jennings, the Bryco Arms property was sold for $4,000,000 (Exhibit 6, Vol. II, p. 60). By this time, Jennings had already visited Mr. Nashban and began preparing for the inevitable Chapter 11 filings (Exhibit 6, Vol. I, pp. 29-32). Presumably, on the advice of counsel, the sales proceeds were quickly siphoned off or distributed to the Trusts instead of Jennings, creating at the very least a fraudulent transfer claim against the Trusts.

-6-

## The Claims Against the Trusts

As a result of the interrelationships among Jennings, Bryco, B.L. Janice Jennings, RKB and the Trusts, litigation was commenced by Maxfield in California to hold Janice Jennings, RKB, the Nevada Trusts and the California Trusts jointly and severally liable for the debts of Bryco, B.L. Jennings and Jennings (the "Judgment Debtors") under a variety of legal theories, including partnership, alter ego, constructive trust and joint enterprise. Fraudulent transfer claims were also asserted. The case was styled as *Brandon James Maxfield, etc. v. Bryco Arms, et al.,* Superior Court, State of California, County of Alameda, Oakland Division; Case No. 841636-4 (the "California Action") and was pending on the petition date.

During the course of the California Action, the Nevada Trusts filed a motion for summary judgment seeking a declaration that they are not liable for the debts of the Judgment Debtors on any alter ego, partnership or joint venture basis. The motion for summary judgment was denied by order dated January 9, 2003 (Exhibit 5).

## The Declaratory Relief Action

Hoping to gain a more favorable forum, the defendants in the California Action, now debtors in this Court, filed this adversary proceeding seeking a declaration that the assets of RKB, Janice Jennings and the Nevada Trusts *should not* be administered for the benefit of the judgments which Maxfield has obtained against the Judgment Debtors. The debtor/plaintiffs have also joined a number of other personal injury claimants who are

-7-

asserting claims against the debtor entities similar to those being asserted by Maxfield. Maxfield has answered the declaratory relief complaint and filed a counterclaim seeking a determination that the assets of RKB, Janice Jennings, the Nevada Trusts and the California Trusts *should* be administered on account of the Maxfield judgment on the theories outlined above. Maxfield has also sought consolidation of the declaratory relief complaint with the now removed California Action pending before this Court as Adversary Number 03-473.

## The Summary Judgment Motion

On December 2, 2003, the Nevada Trusts filed a motion for summary judgment seeking to revisit the issue previously addressed in the California Action and a determination that the Nevada Trusts "have not been party to any joint venture, partnership or other business with any of the [Judgment Debtors] by virtue of (i) their having been former shareholders of Bryco, or (ii) the simple fact that Janice Jennings is a Trustee of the Nevada Trusts. Maxfield agrees that the Nevada Trusts cannot be held liable for the debts of the Judgment Debtors simply because they were former shareholders of Bryco, or simply because Janice Jennings is a Trustee of the Trusts. Rather, these facts are but small pieces in a much larger puzzle of manipulation and control by Bruce Jennings which renders them liable for the Maxfield judgment on a number of legal theories, including joint venture, partnership and alter ego. Moreover, the California court has already determined – on motion for summary judgment filed the Nevada Trusts – that genuine issues of fact exist which precluded summary judgment on these very same issues raised in the instant motion. The Nevada Trusts do not get a second bite at the summary judgment apple simply because

they're in a different forum now.  Summary judgment in favor of the Nevada Trusts should therefore be denied.

### Argument

1. **The California Courts have already determined that triable issues of fact exist with respect to the Trusts.**

On November 14, 2002, the Nevada Trusts filed a motion for summary judgment in the California Action seeking the very same relief sought by the instant motion.  A copy of the motion for summary judgment is attached as Exhibit 1.  The motion was supported by Memorandum of Points and Authorities in support of summary judgment, a copy of which is attached as Exhibit 2.

Maxfield, through his counsel, responded to the motion on December 4, 2003, with (i) a memorandum and points of authority in opposition to the summary judgment motion, a copy of which is attached as Exhibit 3, and (ii) numerous deposition excerpts and documents under a pleading entitled Plaintiff's Evidence in Opposition to Defendant's Nevada Trusts Motion for Summary Judgment and/or Summary Adjudication, a copy of which is attached as Exhibit 4.

On January 9, 2003, the California Court entered an order denying the Nevada Trusts' summary judgment motion finding that Maxfield's evidence was "adequate to create triable issues as to whether the interrelationships between and among the Nevada Trusts, Bryco Arms, Inc. and B.L. Jennings, Inc., through common medium of defendants Janice Jennings

and Bruce Jennings, create liability on behalf of the Nevada Trusts for injuries to [Maxfield]." A copy of the order denying the Trusts' motion for summary judgment is attached as Exhibit 5.

This Court is required to give full faith and credit to the California court's determination that genuine issues of fact exist with respect to the joint venture, partnership, alter ego and constructive trust claims which Maxfield has asserted against the Nevada Trusts:

> Judicial proceedings [of any state] . . . shall have the same full
> faith and credit in every court within the United States . . .

28 U.S.C. § 1738

Forum shopping for more favorable courts is strictly prohibited once an issue has been decided by judicial action. *See e.g. In re Kmart Corp.,* 290 B.R. 601, 613 (N.D. Ill. 2002).

Similarly, the *Rooker-Feldman* doctrine prohibits this Court from revisiting the issues previously decided by the California state court. *Jones v. Crosby,* 137 F.3d 1279, 1280 (11th Cir. 1998)(*Rooker-Feldman* doctrine prevents a party from "recast[ing] his claim and thereby obtain[ing] collateral review in federal court of the state court decision"). Although the *Rooker-Feldman* doctrine is principally used in connection with final judgments, the *Rooker-Feldman* doctrine has also been extended to interlocutory rulings. *See e.g. Brown & Root, Inc. v. Breckenridge,* 211 F.3d 194, 199 (4th Cir. 2000)("*Rooker-Feldman* also applies to interlocutory orders issued by state courts"); and *Doctor's Assocs., Inc. v. Distajo,* 107 F.3d

-10-

126, 138 (2nd Cir. 1997)("It cannot be the meaning of *Rooker-Feldman* that, while the inferior federal courts are banned from reviewing final decision of state courts, they are free to review interlocutory orders").

Finally, the doctrine of issue preclusion, or collateral estoppel, prevents the Nevada Trusts from relitigating the California court's determination that there are genuine issues of material fact from which a jury could find that the interrelationship between Jennings, Bryco, B.L. Jennings, and the Nevada Trusts created joint enterprise, partnership or alter ego liability. *S.E.L. Maduro (Florida), Inc. v. M/V Antonio de Gastaneta,* 833 F.2d 1477, 1483 (11th Cir. 1987)("collateral estoppel is issue preclusion; it refers to the preclusive effect of a judgment in foreclosing the relitigation of a particular issue in a subsequent proceeding if that issue was raised, litigated, and adjudicated in a prior lawsuit"). The issues framed by the Nevada Trusts were actually litigated in state court. The California court found the existence of sufficient evidence to warrant submitting the joint venture, partnership and alter ego claims to the jury. For the reasons set forth above - - and out of respect for the state court' ruling, this Court should not revisit this issue on summary judgment.

## 2.    There are genuine issues of material fact.

Even if the instant issues had not been previously submitted for summary adjudication, there are numerous inferences which can be drawn from the evidence to conclude that the assets of the Nevada Trusts should be administered for the benefit of the Maxfield judgment.

To begin with, there is serious question as to whether the Nevada Trusts were, as the movants suggest, even shareholders in Bryco. The stock certificates were initially issued directly to Jennings' children on April 20, 1987, several weeks prior to the formation of the Nevada Trusts (Exhibit 4, pp.34-39, 67-68). There are no documents reflecting the transfer of the certificates from the children to the Nevada Trusts once the trusts were established. If the Nevada Trusts were not shareholders but received distributions of profits (see Exhibit 4, pp. 71-74), then the Nevada Trusts are considered "partners" in Jennings' gun manufacturing business as a matter of law. Nev. R.Stat § 87.070 ("The receipt by a person of a share of the profits of the business is *prima facie* evidence that he is a partner in the business. . ."). Such a partnership or joint venture can arise by law even in the absence of a formal partnership agreement:

> [T]here is no specific test to determine the existence of a partnership. An express written agreement to form a partnership is not required. . . . The trier of fact must look to the conduct of the parties and all the circumstances surrounding the relationship and transactions. . . . The key factor is not the subjective intent of the parties to form a partnership, but instead the intent of the parties to do the things that the law will consider a partnership. . . . It is immaterial that the parties do not call their relationship, or believe it to be, a partnership, especially where the rights of third parties are concerned.
>
> *Shaw v. Delta Airlines, Inc.,* 798 F.Supp. 1433, 1456 (D. Nev. 1992)(citations omitted).

Pursuant to Nev. R.Stat § 87.150(1), members of the partnership are liable "jointly and severally for everything chargeable to the partnership." The Nevada Trusts - - who were partners with Bryco and Jennings at the time the injuries to Maxfield occurred - - are thus jointly and severally liable with Bryco for the Maxfield judgment.[2] Resolving the conflicting evidence regarding ownership of the shares on summary judgment would be improper. *Augusta Iron and Steel Works v. Employers Ins. of Wausau*, 835 F.2d 855, 856 (11th Cir. 1988) ("[M]aterial facts which remain the subject of a 'genuine dispute' . . . preclude summary judgment").

Similarly, the alter ego doctrine, as interpreted by the Nevada courts, permits a creditor to pursue claims against affiliated entities who received assets from the debtor corporation where there is such a relationship between the parties where the adherence to the fiction of a separate entity would sanction a fraud or promote injustice. The requirements for finding that one corporation is the alter ego of another are as follows:

> (1) the corporation must be influenced and governed by the person asserted to be its alter ego; (2) there must be such unity of interest and ownership that one is inseparable from the other; and (3) the facts must be such that adherence to the fiction of a separate entity would sanction a fraud or promos injustice.
>
> *McCleary Cattle Co. v. Sewell*, 73 Nev. 279, 282, 317 P.2d 957, 959 (1957).

---

[2] Again, Maxfield was injured in 1994, at least four years before the purported transfer of stock from the Nevada Trusts to Janice Jennings.

-13-

Undercapitalization, the diversion of funds, commingling of assets, and treatment of corporate assets as the individual's own are sufficient to establish "unity of interest":

> Some factors to be considered when determining if unity exists in an alter ego analysis include, but are not limited to, commingling of funds, undercapitalization, unauthorized diversion of funds, treatment of corporate assets as the individual's own, and failure to observe corporate formalities.
>
> *Lorenz v. Beltio, Ltd.*, 114 Nev. 795, 800, 963 P.2d 488, 497 (1998).

All of these factors are present here. Bruce Jennings controlled all of the entities. Profits were "diverted" from Bryco and B.L. Jennings to Jennings, RKB and the Nevada Trusts (either directly or indirectly) as they were accumulated or as creditors began closing in (Exhibit 4, pp. 71-74, 80). The operating entities (which bare all the liability risks) were left with very little operating capital. Bryco and B.L. Jennings were stripped of assets, undercapitalized and encumbered by liens in favor of Jennings in an effort to forestall creditor collection efforts. Corporate formalities were rarely followed, particularly with respect to the transfer of assets in and out of RKB. Jennings never exercised proper fiduciary duties when dealing with Trust assets (Exhibit 4, pp. 21-22, 27-28). The success of the Jennings' empire was tied to the success of Bryco and B.L. Jennings. A finder of fact could easily find that all of the entities utilized by Jennings, including the Nevada Trusts, were part of a joint profit making enterprise centered on manufacturing an inherently dangerous product without any liability insurance or reserves for potential losses. Because different inferences can be drawn from this evidence, it would be improper to grant summary judgment in favor of the movants. *See e.g. Barfield v. Brierton*, 883 F.2d 923, 933-34 (11th

Cir. 1989)(where a fact finder can "draw more than one inference from the facts, and that inference creates a genuine issue of material fact, then the court should refuse to grant summary judgment"); and *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, (11th Cir. 1995)("the court must draw inferences from the evidence in the light most favorable to the non-movant and resolve all reasonable doubts in that party's favor").

It is also important to keep in mind that the California court has already determined that Bryco and B.L. Jennings were sham corporations and should be considered "one and the same" with Jennings (Exhibit 7). The Nevada Trusts cannot be legitimate shareholders of a corporation which itself is nothing but a sham.

### 3.     The motion for summary judgment is premature.

The Trusts filed their motion for summary judgment on December 2, 2003. The pretrial in this adversary proceeding was not held until January 6, 2003. Pursuant to Rule 26(d) and this Court's Scheduling Order, the parties were prohibited from commencing discovery prior to the status conference.

While admittedly Maxfield has the benefit of discovery obtained in the California Action, Maxfield's current counsel has had less than three weeks to conduct discovery in this adversary proceeding. *See also In re Warner (Talbot v. Warner)*, 65 B.R. 512, 518 (Bankr. S.D. Ohio 1986)("[T]he presentation or defense of a motion for summary judgment requires, at a minimum, an adequate opportunity (whether exercised or not), for the parties to conduct full discovery of the issue. . ."); and *WSB-TV v. Lee*, 842 F.2d 1266 (11th Cir. 1988)(Grant of summary judgment before non-movant had been afforded opportunity for discovery was reversible error).

The first deposition in this adversary proceeding will take place on Wednesday, February 4, 2004 when Maxfield will take the deposition of Gary Genske, the long-time CPA for all of the debtor-related entities. That deposition will be followed by additional depositions of Bruce Jennings, Anna Leah Jennings and Janice Jennings. Until such time as those depositions are concluded, it would be inappropriate to consider the Nevada Trusts' motion for summary judgment.

> **4.     The issues framed by the summary judgment motion are not dispositive.**

Even assuming for the moment that the Nevada Trusts had no liability for the Maxfield judgment because there was no joint venture or partnership among Jennings, Bryco, B.L. Jennings and the Nevada Trusts, the Nevada Trusts would still not be entitled to summary judgment as to all matters framed by the complaint and counterclaim.

For instance, the motion for summary judgment fails to address Maxfield's constructive trust claims. A constructive trust is a remedial devise by which the holder of legal title to property is held to be a trustee of that property for the benefit of another who in good conscience is entitled to it:

> A constructive trust will arise and effect property acquisitions under circumstances where (1) a confidential relationship exists between the parties; (2) retention of legal title by the holder thereof against another would be inequitable; and (3) the existence of such a trust is essential to the effectuation of justice.
>
> *Locken v. Locken*, 98 Nev. 369, 372, 650 P.2d 803, 805 (1982).

-16-

Jennings is believed to have began stripping Bryco of its assets soon after learning of the Maxfield claim, including a distribution of $600,000 to Janice Jennings in May of 2000 (Exhibit 4, p. 80). But even before that point in time, Jennings kept Bryco in a severely undercapitalized state by moving profits "up stream" to the purported shareholders. The frequency of the distribution appears to have increased as creditors began closing in (Exhibit 4, pp. 71-74, 80). Bryco never carried insurance to cover the inevitable product liability claims. Retention of the diverted funds profits by the Nevada Trusts under these circumstances, would be inequitable, particularly since a gun manufacturer is likely to have numerous liability claims asserted against it. *See e.g. Rowland v. Lepire,* 99 Nev. 308, 317, 662 P.2d 1332, 1337 (1983)("undercapitalization, where it is clearly shown, is an important factor in determining whether the doctrine of alter ego should be applied"); and *Laborers Clean-Up Contract Admin. Trust Fund v. Uriate Clean-Up Service, Inc.,* 736 F.2d 516, 525 (9th Cir. 1984)(Inequity found when "a corporation is so undercapitalized that it is unable to meet debts that may reasonably be expected to arise in the normal cause of business").

Finally, this Court has the discretion to deny summary judgment if it believes that the better course is to try the matter on the merits. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 106 S.Ct. 2505, 2513 (1986)(Trial court may deny summary judgment where there is reason to believe that the better course would be to proceed to a full trial). The claims against the Nevada Trusts are potentially the only source of funds from which creditors such as Maxfield will be paid. The better course of action would be to have these claims tried on their merits.

For all the above reasons, Maxfield requests that the motion for summary judgment filed by the Nevada Trusts be denied and that the Court grant such other relief as is appropriate.

**STUTSMAN & THAMES, P.A.**

By_____
        Richard R. Thames

Florida Bar Number 0718459
121 W. Forsyth Street, Suite 600
Jacksonville, Florida  32202
(904) 358-4000
(904) 358-4001 (Facsimile)

Attorneys for Brandon James Maxfield

-18-

## Certificate of Service

I certify that a copy of the foregoing was furnished by mail to Ned R. Nashban, Esq., Quarles & Brady, LLP, 1900 Glades Road, Suite 355, Boca Raton, Florida 33431; Benjamin R. Norris, Esq., Quarles & Brady Streich Lang, LLP, Two North Central Avenue, Phoenix, Arizona 85004-2391; Douglas H. Morford, Esq., Morford & Whitefield, P.A., 4040 Woodcock Drive, Suite 202, Jacksonville, Florida 32207; Michael C. Hewitt, Esq., 380 Clinton Avenue, Unit C, Costa Mesa, California 92626; Joel Grist, Esq., Kenneth M. Brock, Esq., Grist & Brock, LLP, 915 Hill Park, Suite 301, Macon, Georgia 31201; Kenneth Marder, Esq., Taub & Marder, 450 Seventh Avenue, 37th Floor, New York, New York 10123; Peter A. Siddiqui, Esq., Ronald R. Peterson, Esq., Jenner & Block, LLC, One IBM Plaza, Chicago, Illinois 60611; Luca R. Bronzi, Esq., Hogan & Hartson, LLP, 1111 Brickell Avenue, Miami, Florida 33131; Locke E. Bowman, Esq., Jean MacLean Snyder, Esq., Macarthur Justice Center, University of Chicago Law School, 111 E. 60th Street, Chicago, Illinois 60637; Thomas H. Geoghegan, Esq., Despres, Schwartz & Geoghegan, 77 West Washington Street, Suite 711, Chicago, Illinois 60637; Joan Truman Smith, 145-42 115th Avenue, Jamaica, New York 11436; Thomas Johnson, Sr., 1387 Sunnyside Street, Far Rockaway, New Jersey 11691; and to Aaron J. Malo, Esq., Sheppard, Mullin, Richter & Hampton, LLP, 650 Town Center Drive, 4th Floor, Costa Mesa, California 92626 on this ___2___ day of February, 2004.

_____
Attorney

49947