UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | | |
|---|---|---|
| In re | ) | |
| BRUCE LEE JENNINGS, et al., | ) | Case No. 03-04926-3F1 |
| Debtors. | ) | |
| | ) | |
| RKB INVESTMENTS, et al., | ) | |
| Plaintiffs, | ) | Adversary No. 03-203 |
| v. | ) | |
| BRANDON JAMES MAXFIELD, et al., | ) | |
| Defendants. | ) | |
| | ) | |
| JANICE KAY JENNINGS, | ) | |
| Plaintiffs, | ) | Adversary No. 03-345 |
| v. | ) | |
| BRANDON JAMES MAXFIELD, et al., | ) | |
| Defendants. | ) | |
| | ) | |
| BRANDON JAMES MAXFIELD, | ) | |
| Plaintiff, | ) | Adversary No. 03-473 |
| v. | ) | |
| BRYCO ARMS, INC., et al., | ) | |

|                                 |   |                       |
|---------------------------------|---|-----------------------|
| Defendants.                     | ) |                       |
|                                 | ) |                       |
| BRANDON JAMES MAXFIELD,         | ) |                       |
| Plaintiff,                      | ) | Adversary No. 04-107  |
| v.                              | ) |                       |
| BRYCO ARMS, INC., et al.,       | ) |                       |
| Defendants.                     | ) |                       |
|                                 | ) |                       |

## BRANDON JAMES MAXFIELD'S
## MOTION TO PERMIT JURY TRIAL

Brandon James Maxfield ("Maxfield") moves the Court pursuant to Rules 38(a) and 39, Federal Rules of Civil Procedure, as incorporated by Rule 9015, Federal Rules of Bankruptcy Procedure, for a trial by jury of certain issues presented in these consolidated adversary proceedings, and in support of the motion states:

1.    Maxfield is a minor who was severely injured when a handgun designed by Bruce L. Jennings, manufactured by Bryco Arms, Inc. ("Bryco"), and distributed by B.L. Jennings, Inc. ("B.L. Jennings") accidentally discharged rendering Maxfield a quadriplegic.

2.    In 2000, Maxfield commenced an action against Bruce L. Jennings, Bryco and B.L. Jennings styled as *Brandon J. Maxfield, etc. v. Bryco Arms, Inc., et al.,* Superior Court, State of California, County of Alameda, Oakland Division Case No. 841636-4 (the "First California Action") to recover damages for the personal injuries which he suffered.  A copy

of the first amended complaint filed in the First California Action is attached as Exhibit A. A second action styled as *Brandon J. Maxfield, etc. v. Bryco Arms, Inc., et al.,* Superior Court, State of California, County of Alameda, Oakland Division Case No. 2002-044628 (the "Fraudulent Transfer Action") was filed against Janice K. Jennings, RKB Investments, The Kimberly K. Jennings California Trust, The Kimberly K. Jennings Nevada Trust, The Bradley A. Jennings California Trust, The Bradley A. Jennings Nevada Trust, The Rhonda D. Jennings California Trust and The Rhonda D. Jennings Nevada Trust seeking to hold these parties jointly and severally liable on various alter ego, fraudulent transfer and joint venture theories. A copy of the complaint filed in the Fraudulent Transfer Action is attached as Exhibit B. Both actions were to be tried by jury.

3.      The First California Action was divided into three separate phases. Phase I was to determine liability, Phase II was to establish damages, and Phase III was to address alter ego, fraudulent transfer and joint venture liability theories.

4.      Following the jury trial of Phase II, Maxfield obtained a judgment for $21,250,650.31 against Bryco, B.L. Jennings and Bruce L. Jennings. On May 14, 2003 (the "Petition Date"), one day after the judgment was entered, Bryco, B.L. Jennings, Bruce L. Jennings, Janice Lee Jennings, and the Trusts and the partnerships described in paragraph 2 above filed voluntary petitions for reorganization with this Court.[1]

5.      On the Petition Date, a jury was impaneled in the First California Action and was prepared to proceed with Phase III. Additionally, a motion to consolidate Phase III with

---

[1]  The judgment amount has since been increased to $24,492,578.47 following taxation of costs, prejudgment interest and the like.

the Fraudulent Transfer Action had been filed but not yet ruled upon. Phase III and the Fraudulent Transfer Actions were stayed upon the filing of the Chapter 11 cases.

6.      By stipulation, Maxfield and the Jennings constituency consented to the removal of the First California Action and the Fraudulent Transfer Action to the United States District Court for the Northern District of California. From there, the actions were transferred to the United States District Court for the Middle District of Florida, Jacksonville Division with subsequent referral to the Bankruptcy Court in which these cases are now pending. The First California Action was assigned adversary number 03-473 and the Fraudulent Transfer Action was assigned adversary number 04-107.

7.      While that transfer was in progress, RKB Investments, The Kimberly K. Jennings California Trust, The Kimberly K. Jennings Nevada Trust, Bradley A. Jennings California Trust, The Bradley A. Jennings Nevada Trust, The Rhonda D. Jennings California Trust and The Rhonda D. Jennings Nevada Trust filed adversary proceeding 03-203 against Maxfield and others asking this Court to enter a declaratory judgment determining that they have no liability to the defendants under any theory whatsoever. Janice Kay Jennings did not join in the adversary proceeding as a plaintiff.

8.      On September 18, 2003, Maxfield answered the amended complaint in adversary 03-203 and asserted counterclaims against the plaintiffs requesting a declaration that the plaintiffs *are* liable to Maxfield and the other defendants on the same theories alleged in the California Action. Maxfield also asserted third-party complaints against Janice Kay Jennings, Bryco, B.L. Jennings and Bruce L. Jennings to establish their joint and several liabilities for the debts of Bruce Jennings, Bryco and B.L. Jennings.

-4-

9.      On August 29, 2003, Janice Kay Jennings filed adversary proceeding 03-345 against Maxfield and others requesting the same declaratory relief as that requested in adversary proceeding 03-203.  Maxfield answered Janice Kay Jennings' complaint on September 18, 2003, and asserted a counterclaim against her requesting that she too be found liable to Maxfield on the same joint venture, alter ego and fraudulent transfer theories originally asserted in both of the California Actions.  Third-party complaints were also filed against the other parties identified in paragraph 2 above, again seeking a determination that all of the trusts and partnerships described in paragraph 2 above are jointly and severally liable for the debts of Bruce Jennings, Bryco and B.L. Jennings.

10.     By order dated March 11, 2004, all four adversary proceedings were consolidated for trial purposes.

11.     The claims on which the fraudulent transfer, alter ego, joint enterprise and constructive trust claims are premised are described generally below:

        a.      Alter Ego / Joint Instrumentality.  Bruce Jennings controlled and manipulated B.L. Jennings, Bryco, RKB and the Trusts, in such a fashion that B.L. Jennings, Bryco, RKB and the Trusts should be considered his alter ego under both California and Nevada law.

        b.      Constructive Trust. The assets of RKB and the Trusts have been used exclusively for his personal benefit.  Whenever nominal title is placed in the name of another, a constructive trust may be imposed to satisfy claims against the equitable interest holder.

-5-

c.    <u>Fraudulent Transfer</u>.  There are several levels of fraudulent transfer claims against Janice Jennings, RKB and the Trusts.  On the most basic level, assets were transferred from Bruce Jennings, B.L. Jennings and Bryco to Janice Jennings, RKB and the Trusts with actual intent to hinder, delay or defraud creditors.  Alternatively, the businesses of Bruce Jennings, B.L. Jennings and Bryco were operated in such a fashion to keep them undercapitalized such that every transfer from Jennings, B.L. Jennings and Bryco to Janice Jennings, RKB and the Trusts can be said to be constructively fraudulent.

d.    <u>Joint Enterprise</u>.  B.L. Jennings, Bryco, Bruce Jennings, Janice Jennings, RKB and the Trusts were all part of a single enterprise involved in the manufacture of dangerous handguns.  Profits were routinely funneled among the various entities in an effort to minimize creditor claims against the manufacturing and distributing entities.  The commingling of assets interdependence of the entities on one another is sufficient to hold Janice Jennings, RKB and the Trusts liable to creditors of Bruce Jennings, Bryco and B.L. Jennings liable on a joint venture/partnership basis.

12.    The alter ego, joint instrumentality, joint enterprise and fraudulent transfer claims are legal in nature.  Maxfield is entitled to a jury trial on all legal issues.

13.    Maxfield's entitlement to a jury trial was not affected by the removal of those actions to state court, nor by his filing of proofs of claim in these consolidated bankruptcy cases as this dispute is not part of the ordinary claims allowance process.

-6-

14.    This motion is supported by the following memorandum of law.

### Memorandum of Law

1.    **The Seventh Amendment entitles Maxfield to a jury trial on all legal issues.**

The Seventh Amendment provides:

> In Suits at common law, where the value in controversy will exceed twenty dollars, the right of trial by jury will be preserved . . . "

> Amendment VII, United States
> Constitution

The phrase "[s]uits at common law" refers to "suits in which <u>legal</u> rights were to be ascertained and determined, in a contradistinction to those where equitable rights alone were recognized, and equitable remedies were administered." *Granfinanciera, S.A., v. Nordberg,* 492 U.S. 33, 41, 109 S.Ct. 2782, 2790 (1989), quoting *Parsons v. Bedford,* 3 Pet. 433, 447, 7 L.Ed 732 (1830).

In *Granfinanciera,* the Supreme Court set forth a two-part test for determining whether rights are legal or equitable in nature. First, a court must compare the action to 18th Century action brought in the courts of England prior to the merger of the courts of law and equity. Secondly, a court must examine the actual remedy sought and determine whether it is legal or equitable in nature.

As a general rule, claims for monetary relief are legal in nature, and claims for such relief give rise to a right to a trial by jury. *Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340, 352, 118 S.Ct. 1279, 140 L.Ed. 2d 438 (1998). The fact that a legal claim may also involve equitable claims is of little import -- the right to a jury trial is still preserved:

> When legal claims and equitable claims are joined in the same action, the right to a jury trial on the legal claims, including all issues common to both claims, remains intact.
>
> *Burns v. Lawther*, 53 F.3d 1237, 1242
> (11th Cir. 1995).

*See also Curtis v. Loether*, 415 U.S. 189, 196 n. 10, 94 S.Ct. 1005, 39 L.Ed.2d 260 (1974) (when a "legal claim is joined with an equitable claim, the right to a jury trial on the legal claim, including all issues common to both claims, remains intact"); and *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 510-11, 79 S.Ct. 948, 956-57 3 L.Ed. 2d 988 (1959) ("[jury] right cannot . . . be impaired by any blending with a claim, properly cognizable at law, of a demand for equitable relief in aid of the legal action or during its pendency").

### a.    Maxfield is entitled to a jury trial on the fraudulent transfer claims.

The claims against Janice Jennings, RKB and the Trusts include claims that moneys transferred from Bruce Jennings, Bryco and B.L. Jennings were transferred with actual intent to hinder, delay or defraud creditors, or were transferred in such a fashion as to be constructively fraudulent. The remedies sough in the Maxfield complaints included claims for monetary damages against Janice Jennings, RKB and the Trusts based on their receipt of

the fraudulent transfers. Fraudulent conveyance claims accompanied with demands for monetary relief have historically been tried at law, and not equity. Maxfield is thus entitled to a jury trial on his fraudulent transfer claims:

> There is no dispute that actions to recover preferential or fraudulent transfers were often brought at law in late 18th-century England. . . . We therefore conclude that respondent would have had to bring his action to recover an alleged fraudulent conveyance of a determinate sum of money at law in 18th-century England, and that a court of equity would not have adjudicated it.
>
> *Granfinanciera, supra*, 492 U.S. at 43-47; 109 S.Ct. At 2791-2793.

*See also In re Beeline Engineering & Const., Inc. (Beeline Engineering & Const., Inc. v. Monek)*, 139 B.R. 1025, 1027 (Bankr. S.D. Fla. 1992) (defendant entitled to a jury trial on fraudulent conveyance claims); and *In re AVN Corp.*, 235 B.R. 417, 421 (Bankr. W.D. Tenn. 1999) ("It is well settled that the relief traditionally sought and granted for a fraudulent conveyance is an award for damages").

> **b.    Maxfield is entitled to a jury trial on his alter ego and joint enterprise claims.**

Maxfield also seeks to hold Janice Jennings, RKB and the Trusts liable for the Maxfield judgment on alter ego and joint enterprise theories. These theories recognize that in certain situations, the distinction between corporations and their affiliates should be disregarded:

> The common verbalization of the corporate disregard test is that there must be such unity of interest and ownership that the separate personalities of the corporation and the shareholder should no longer exist, and adherence to the fiction of separate corporate existence would under the circumstances sanction a fraud or promote injustice.
>
> *FMC Finance Corp. v. Murphree*, 632 F.2d 413, 421 (5th Cir. 1980).

Because alter ego and joint enterprise claims have their roots in both law and equity, most courts recognize that alter ego and joint enterprise claims are properly submitted to a jury:

> Plaintiffs seek to establish defendants' liability for the judgment already obtained against Developers. This is analogous to the second phase of the old creditors' bill procedure in which the creditor, having obtained a judgment against the corporation in equity, then enforced that judgment against the individual stockholders at law.
>
> Because the action for piercing the corporate veil appears to have its roots in both law and equity . . . it was entirely proper for the district court to submit the corporate disregard issue to the jury.
>
> *Wm. Passalacgua Builders, Inc. v. Resnick Developers South,Inc.*, 933 F.2d 131, 136 (2nd Cir. 1991).

*See also In re Bonds Distributing Co., Inc.*, 2000 WL 33682815 (Bankr. M.D. N.C. 2000) ("The weight of authority appears to recognize a right to a jury trial with respect to claims seeking to pierce the corporate veil based upon the theories of alter ego of mere

instrumentality"); and *FMC Finance Corp. v. Murphree*, 632 F.2d 413, 421 n. 5 (5th Cir.

1980) ("the issue of corporate entity disregard is one for the jury").[2]

**2.      Maxfield's Right to a jury trial is preserved not withstanding the removal of the California Actions to federal court.**

Jury trials were pending on all of Maxfield's claims on the Petition Date. The right

to a jury trial was not lost simply because the Jennings constituency removed the actions to

federal court.  Rule 81(c),  provides in relevant part:

> If at the time of removal all necessary pleadings have been served, a party entitled to trial by jury under Rule 38 will be accorded it, if the party's demand therefore is served within 10 days after service on the party of the notice of filing the petition.  **A party who, prior to removal, has made an express demand for trial by jury in accordance with state law need not make a demand after removal.**

> Rule 81(c), Federal Rules of Civil Procedure.

California Code of Civil Procedure § 631 sets for the requirements for making a

proper jury demand in a civil case tried in California courts.  Under § 631, a party's right to

a jury trial is waived if the party failed to "announce that a jury is required, at the time the

cause is first set for trial, if it is set upon notice of stipulation, or within five days of the

notice of setting if it is set without notice of stipulation." Maxfield properly demanded a jury

---

[2]  *Murphree* is binding on the Court pursuant to the authority of *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981).

trial prior to removal. In fact, a jury had already determined liability, awarded damages against Brcyo, B.L. Jennings, and Bruce L. Jennings, and was prepared to address the alter ego, fraudulent transfer and joint venture liability theories on the Petition Date. Thus, the removal of the California Actions to federal court, and subsequently to this Court, does not extinguish Maxfield's entitlement to a jury.

**3.    Maxfield has not waived his right to a jury trial by simply filing proofs of claim against Janice Jennings, RKB and the Trusts.**

The most difficult issue to be addressed in connection with this motion is whether Maxfield's filing of proofs of claim invoked the equitable jurisdiction of the bankruptcy court thereby resulting in a waiver of the right to a jury trial.

In *Katchen v. Landy*, 382 U.S. 323, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966), the Supreme Court first suggested that a defendant in a preference action might be entitled to a jury trial if he had not previously filed a proof of claim against the bankruptcy estate.

In 1989, the Supreme Court broached this subject again in *Granfinanciera*, and held that a defendant in a fraudulent transfer action was entitled to a jury trial where the defendant had not filed a proof of claim against the estate.

The *Granfinanciera* case was followed one year later by yet another Supreme Court decision in *Langenkamp v. Culp*, 498 U.S. 42, 111 S.Ct. 330, 112 L.Ed. 2d 343 (1990), in which the Supreme Court held that a defendant in a preference action was not entitled to a jury trial where the defendant had submitted a proof of claim to the bankruptcy court.

-12-

The rationale for the *Langenkamp* decision follows: By filing a claim against the estate a creditor triggers the process of allowance and disallowance of claims, and the debtor's preference claim becomes part of the claims-allowance process. This process is integral to the restructuring of the debtor-creditor relationship through the bankruptcy court's equity jurisdiction, which the creditor has involved by filing the claim. However, when no claim is filed against the estate is filed, an action to recover a monetary preference is essentially a legal one, and the Seventh Amendment requires that the defendant be afforded a jury trial.

However, in this case, it cannot be reasonably argued that Maxfield waived his right to a jury trial by filing proofs of claim against Janice Jennings, RKB and the Trusts.

First, this litigation has nothing whatsoever to do with the allowance or assertion of Maxfield's claim. Maxfield is instead playing the role of a Chapter 11 trustee, seeking to bring into the various estates property which the debtors have fraudulently and otherwise wrongfully transferred to Janice, RKB and the Trusts.[3] Maxfield's claim really has nothing to do with this dispute. The Court must determine the jury trial issue as if the matter were being prosecuted by the debtor or a trustee.

Second, recent cases acknowledge that creditors such as Maxfield are not *voluntarily* submitting themselves to the jurisdiction of the bankruptcy courts by filing proofs of claim. Rather, by virtue of Bankruptcy Rule 3003, creditors whose claims have been designated as disputed are being forced to file a proof of claim or risk "not be[ing] treated as a creditor

---

[3] Maxfield has recently filed a motion for authority to pursue certain claims on behalf of Bruce Jennings' estate. The majority of claims asserted in this adversary proceeding are encompassed within that motion.

with respect to such claim for the purposes of voting and distribution." In other words, it is the debtor's unilateral act which forces the creditor to participate in the bankruptcy proceedings.

The courts have thus concluded that, under such circumstances, it is unfair to deprive a party of his or her right to a jury trial simply because the debtor made a conscious decision to avail himself of the bankruptcy court's protection:

> Due to the importance of the Seventh Amendment right to a jury trial within our constitutional system, it is highly unlikely that Congress intended that a plaintiff should be deemed to have voluntarily waived its right to a jury trial when that party was forced to file an adversary proceeding in the bankruptcy proceeding . . . The creditor is 'forced' to file its complaint in this Court in the very important practical sense that there is no other court from which it can seek relief.
>
> *In re Weinstein (Sobel, Inc. v. Weinstein)*, 237 B.R. 567, 575 (Bankr. E.D. N.Y. 1999).

*See also In re Data Compass*, 92 B.R. 575 (Bankr. E.D. N.Y. 1988) (A non-debtor defendant forced to file counterclaims to a complaint in a core bankruptcy proceeding does not waive his right to a jury trial. The defendant risk collateral estoppel if he does not assert his counterclaims).

Thus, the mere filing of a proof of claim is no longer deemed to automatically result in a waiver of a right to a jury trial. Instead, the Court should focus its inquiry to whether the dispute is part of the normal claims-allowance process in determining whether a party is entitled to a trial by jury:

-14-

> We conclude that neither precedent nor logic supports the proposition that either the creditor or the debtor automatically waives all right to a jury trial whenever a proof of claim is filed. For a waiver to occur, the dispute must be part of the claims-allowance process or affect the hierarchal reordering of creditors' claims. Even there the right to a jury trial is lost not so much because it is waived, but because the legal dispute has been transformed into an equitable issue.

> *Germain v. Connecticut Nat. Bank,*
> 988 F.2d 1323, 1331 (2nd Cir. 1993).

*See also In re Weinstein (Sobel, Inc. v. Weinstein)*, 237 B.R. 567, 575 (Bankr. E.D. N.Y. 1999) (the focus of the jury trial inquiry is not whether a proof of claim is filed, but whether the subject dispute involves the "hierarchal reordering of creditors' claims").

The dispute in this adversary proceeding is not about Maxfield's $24,492,578.47 claim or the merits thereof; rather, it concerns whether Janice Jennings, RKB and the Trusts are the recipients of fraudulent transfers or are otherwise liable for the debts of Bruce Jennings, Bryco and B.L. Jennings. In other words, the outcome of this adversary proceeding will not affect the amount owed to Maxfield -- it is intended to recover property of these estates on any number of legal theories. The Supreme Court itself has recognized that fraudulent conveyance actions like this are not 'integral' to the restructuring of the debtor-creditor relations." *Granfinanceria*, 492 U.S. at 58; 109 S.Ct. 2799.

Moreover, the fact some of the claims at issue have been designated as "core" proceedings, or that this adversary proceeding is to be tried before the bankruptcy court, is of little import -- Congress cannot deprive a party of its existing jury trial rights:

-15-

> Congress cannot eliminate a party's Seventh Amendment right to a jury trial merely by relabeling the cause of action to which it attaches and placing exclusive jurisdiction in an administrative agency or a specialized court of equity.
>
> *Granfinanceria*, 492 U.S. at 61; 109 S.Ct. At 2800.

Again, Maxfield's success in this litigation will benefit all similarly situated creditors. This dispute has nothing to do with the amount of Maxfield's claim or his priority in any distribution scheme. Maxfield's right to a jury trial should therefore be upheld.

## Conclusion

Maxfield is entitled to a jury trial on his alter ego, joint instrumentality / enterprise, and fraudulent transfer claims. While Maxfield concedes that he is not entitled to a jury trial on the constructive trust claims, as those claims are traditionally equitable in nature, the right to a jury trial was preserved notwithstanding the removal of the California Actions to federal court. Similarly, Maxfield's right to a jury trial is not lost based on the filing of proofs of claim which have nothing to do with the instant litigation. This litigation is intended to recover property of these estates. The right to a jury trial herein cannot therefore be disputed.

-16-

For the foregoing reasons, Maxfield respectfully requests (i) the entry of an order allowing these consolidated adversary proceedings to be tried by a jury and (ii) granting such other and further relief as is appropriate.

**STUTSMAN & THAMES, P.A.**

By _____
Richard R. Thames

Florida Bar Number 0718459
121 W. Forsyth Street, Suite 600
Jacksonville, Florida  32202
(904) 358-4000
(904) 358-4001 (Facsimile)

Attorneys for Brandon James Maxfield

-17-

**Certificate of Service**

I certify that a copy of the foregoing was furnished by mail to Ned R. Nashban, Esq., Quarles & Brady, LLP, 1900 Glades Road, Suite 355, Boca Raton, Florida 33431; Douglas H. Morford, Esq., Morford & Whitefield, P.A., 4040 Woodcock Drive, Suite 202, Jacksonville, Florida 32207; Michael C. Hewitt, Esq., 380 Clinton Avenue, Unit C, Costa Mesa, California 92626; Joel Grist, Esq., Kenneth M. Brock, Esq., Grist & Brock, LLP, 915 Hill Park, Suite 301, Macon, Georgia 31201; Kenneth Marder, Esq., Taub & Marder, 450 Seventh Avenue, 37th Floor, New York, New York 10123; Peter A. Siddiqui, Esq., Ronald R. Peterson, Esq., Jenner & Block, LLC, One IBM Plaza, Chicago, Illinois 60611; Luca R. Bronzi, Esq., Hogan & Hartson, LLP, 1111 Brickell Avenue, Miami, Florida 33131; Locke E. Bowman, Esq., Jean MacLean Snyder, Esq., Macarthur Justice Center, University of Chicago Law School, 111 E. 60th Street, Chicago, Illinois 60637; Thomas H. Geoghegan, Esq., Despres, Schwartz & Geoghegan, 77 West Washington Street, Suite 711, Chicago, Illinois 60637; Joan Truman Smith, 145-42 115th Avenue, Jamaica, New York 11436; and to Thomas Johnson, Sr., 1387 Sunnyside Street, Far Rockaway, New Jersey 11691 on this _16_ day of July, 2004.

_____
Attorney

-18-

1 | RICHARD R. RUGGIERI, ESQ. (Bar No. 087670)
Courthouse Square
2 | 1000 Fourth Street, Suite 785
San Rafael, CA  94901-3120
3 | Tel: 415-457-9382
Fax: 415-457-9399
4 |
Attorneys for plaintiff Brandon James
5 | Maxfield, a minor, by and through his
guardian ad litem, Susan Stansberry
6 |

ENDORSED
FILED
ALAMEDA COUNTY

JAN 3 1 2002

CLERK OF THE SUPERIOR COURT
By R.C. Hughes,

7 |

8 |

9 |

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF ALAMEDA

10 |

OAKLAND DIVISION

11 | BRANDON JAMES MAXFIELD, A
MINOR, BY AND THROUGH HIS
12 | GUARDIAN AD LITEM, SUSAN
STANSBERRY
13 |

Plaintiff(s),

14 |

vs.

15 |

BRYCO ARMS, B. L. JENNINGS, INC.,
16 | BRUCE LEE JENNINGS, JANICE KAY
JENNINGS, ANNA LEAH JENNINGS,
17 | RKB INVESTMENTS, BRUCE LEE
JENNINGS AS TRUSTEE FOR THE
18 | RHONDA D. JENNINGS CALIFORNIA
TRUST, JANICE KAY JENNINGS AS
19 | TRUSTEE FOR THE RHONDA D.
JENNINGS CALIFORNIA TRUST,
20 | BRUCE LEE JENNINGS AS TRUSTEE
FOR THE RHONDA D. JENNINGS
21 | NEVADA TRUST, JANICE KAY
JENNINGS AS TRUSTEE FOR THE
22 | RHONDA D. JENNINGS NEVADA
TRUST, BRUCE LEE JENNINGS AS
23 | TRUSTEE FOR THE KIMBERLY K.
JENNINGS CALIFORNIA TRUST,
24 | JANICE KAY JENNINGS AS TRUSTEE
FOR THE KIMBERLY K. JENNINGS
25 | CALIFORNIA TRUST, BRUCE LEE
JENNINGS AS TRUSTEE FOR THE
26 | KIMBERLY K. JENNINGS NEVADA
TRUST, JANICE KAY JENNINGS AS

No.  841636-4

FIRST AMENDED
COMPLAINT

27 |

28 |

1

03ID00565/

1 | TRUSTEE FOR THE KIMBERLY K.                )
2 | JENNINGS NEVADA TRUST, BRUCE               )
  | LEE JENNINGS AS TRUSTEE FOR THE            )
  | BRADLEY A. JENNINGS CALIFORNIA             )
3 | TRUST, JANICE KAY JENNINGS AS              )
  | TRUSTEE FOR THE BRADLEY A.                 )
4 | JENNINGS CALIFORNIA TRUST,                 )
  | BRUCE LEE JENNINGS AS TRUSTEE              )
5 | FOR THE BRADLEY A. JENNINGS                )
  | NEVADA TRUST, JANICE KAY                   )
6 | JENNINGS AS TRUSTEE FOR THE                )
  | BRADLEY A. JENNINGS NEVADA                 )
7 | TRUST, NSD WEST, INC.,                     )
  | NATIONWIDE SPORTS                          )
8 | DISTRIBUTORS, INC., LESLIE                 )
  | EDELMAN, WALTER KROH DBA                   )
9 | WILLITS PAWN, KUNIGUNDA KROH               )
  | DBA WILLITS PAWN, LARRY                    )
10 | WILLIAM MOREFORD, II, AND DOES            )
   | 1-300, INCLUSIVE                          )
11 |                                           )
   |                  Defendant(s).            )
12 | _____  )

As and for his First Amended Complaint against defendants, and each of them, plaintiff Brandon James Maxfield, a minor, by and through his guardian ad litem, Susan Stansberry alleges his Causes of Action as follows:

## GENERAL ALLEGATIONS

1. Plaintiff Brandon James Maxfield is a minor residing in the State of California.

2. Susan Stansberry is the duly appointed Guardian Ad Litem for Brandon James Maxfield in this action, and is a resident of the State of California.

3. On April 6, 1994, 7 year old plaintiff Brandon James Maxfield was rendered quadriplegic by the accidental discharge of a Jennings/Bryco Model 38 semi-automatic pistol, serial no. 265669, commonly referred to as a "Saturday Night Special," which, along with its packaging, magazines, instructions, warnings, accessories, etc., is hereinafter referred to as "the Jennings/Bryco pistol."

2

FIRST AMENDED COMPLAINT

4. Defendant Larry William Moreford, II, is the individual who was handling the Jennings/Bryco pistol at the time of its accidental discharge, and who resides in Oakland, California.

5. Defendant Bruce Lee Jennings is the individual who designed the Jennings/Bryco pistol, and who resides and does business in the State of California.

6. Defendants Bryco Arms and B. L. Jennings, Inc. are Nevada corporations that designed, assembled, manufactured, tested, packaged and sold the Jennings/Bryco pistol, and that conduct business in the State of California.

7. Defendant Janice Kay Jennings is an individual who was the second wife of defendant Bruce Jennings, and who resides and/or does business in the State of California.

8. Defendant Anna Leah Jennings is an individual who was the third wife of defendant Bruce Jennings, and who resides and/or does business in the State of California.

9. Rhonda D. Jennings, Kimberly K. Jennings and Bradley A. Jennings are the children and/or stepchildren of defendants Bruce Lee Jennings and Janice Kay Jennings.

10. Bruce Lee Jennings and Janice Kay Jennings are the trustees and/or co-trustees of trusts which they established in the names of their children, as the Rhonda D. Jennings California Trust, Kimberly K. Jennings California Trust, Bradley A. Jennings California Trust, Rhonda D. Jennings Nevada Trust, Kimberly K. Jennings Nevada Trust, and Bradley A. Jennings Nevada Trust.

11. Defendant RKB Investments is a general partnership, the general partners of which include the Rhonda D. Jennings California Trust, Kimberly K. Jennings California Trust, and Bradley A. Jennings California Trust, and which does business in the State of California.

12. Defendants Bryco Arms, B. L. Jennings, Inc., Bruce Lee Jennings, Janice Kay Jennings, Anna Leah Jennings, RKB Investments, Bruce Lee Jennings and Janice Kay Jennings as Trustees for the Rhonda D. Jennings California and Nevada Trusts, Bruce Lee Jennings and Janice Kay Jennings as Trustees for the Kimberly K. Jennings California and Nevada Trusts, and Bruce Lee Jennings and Janice Kay Jennings as Trustees for the Bradley A. Jennings

3

1   California and Nevada Trusts, and each of them, are members of a partnership, joint venture

2   and/or joint enterprise, hereinafter referred to as "JENNINGS FIREARMS," in which they have

3   combined their skills, resources, properties and knowledge, subject to an agreement and

4   community of interest, sharing of profits and losses, and joint right of control, in a common

5   business enterprise, to make and retain profits from the manufacture and sale of low-priced,

6   low-quality firearms, by avoiding the internalization and/or realization of the costs of injuries,

7   lawsuits and products liability obligations otherwise chargeable in economics and law against

8   said profits.

9       13.  JENNINGS FIREARMS is a partnership, joint venture and/or joint enterprise that

10  designed, assembled, manufactured, tested, packaged and sold the Jennings/Bryco pistol, and

11  that conducts business in the State of California.

12      14.  JENNINGS FIREARMS, and defendants Bruce Lee Jennings, Janice Kay Jennings,

13  Anna Leah Jennings, RKB Investments, Bruce Lee Jennings and Janice Kay Jennings as

14  Trustees for the Rhonda D. Jennings California and Nevada Trusts, Bruce Lee Jennings and

15  Janice Kay Jennings as Trustees for the Kimberly K. Jennings California and Nevada Trusts,

16  and Bruce Lee Jennings and Janice Kay Jennings as Trustees for the Bradley A. Jennings

17  California and Nevada Trusts, are persons and entities which, on information and belief,

18  dominated, controlled and used defendants Bryco Arms and B. L. Jennings, Inc. as their alter

19  egos, in their personal and joint interests, as sham corporations, with a unity of interest and

20  ownership, such that no separate personalities existed, and inequity and unfairness would result

21  if said defendants were not held personally and directly responsible for the acts and omissions

22  of said corporate defendants.

23      15.  Defendants NSD West, Inc., Nationwide Sports Distributors, Inc., and Leslie

24  Edelman are corporations and individuals that purchased and sold the Jennings/Bryco pistol at

25  wholesale, and that conduct business in the State of California.

26      16.  Defendant Leslie Edelman, on information and belief, dominated, controlled and

27  used defendants NSD West, Inc. and Nationwide Sports Distributors, Inc. as his alter egos, in

28                                          4

his personal interests, as sham corporations, with a unity of interest and ownership, such that no separate personalities existed and inequity and unfairness would result if said defendant was not held personally and directly responsible for the acts and omissions of said corporate defendants.

17. Defendants Walter Kroh and Kunigunda Kroh are individuals who sold the Jennings/Bryco pistol at retail, and who reside and conduct business in California under the fictitious name of Willits Pawn.

18. The true names and capacities of defendants Does 1-300, inclusive, are presently unknown to plaintiff, who has therefore sued them by such fictitious names, and prays leave to amend this Complaint to set forth their true names and capacities when these have been finally ascertained. Plaintiff is informed and believes, and on that basis alleges, that such fictitiously named defendants are legally responsible by reason of their negligent or intentional acts or omissions, strict products liability and otherwise, for the injuries and damages complained of herein, and prays for relief accordingly.

## DAMAGES ALLEGATIONS

19. As a direct and proximate result of the said conduct and activities of defendants, and each of them, plaintiff has suffered and continues to suffer personal injuries and pain and suffering in excess of the jurisdictional limits of this Court, the full nature and extent of which are presently unknown to plaintiff, who therefore requests leave to amend this complaint to conform to proof at the time of trial.

20. As a further direct and proximate result of the said conduct and activities of defendants, and each of them, plaintiff has incurred, and will continue to incur, medical, surgical and other related expenses, the full nature and extent and amount of which is presently unknown to plaintiff, who therefore requests leave to amend this complaint to conform to proof at the time of trial.

21. As a further direct and proximate result of the said conduct and activities of defendants, and each of them, plaintiff has incurred, and will continue to incur, loss of income,

5

1  loss of wages, loss of earning capacity and other pecuniary losses, the full nature and extent of

2  which are presently unknown to plaintiff, who therefore requests leave to amend this complaint

3  to conform to proof at the time of trial.

4       22. As a further direct and proximate result of the conduct and activities of defendants,

5  and each of them, plaintiff has incurred, and will continue to incur, such other and further

6  damages as may be proven at trial.

7              **FIRST CAUSE OF ACTION - STRICT PRODUCTS LIABILITY**

8              **AGAINST ALL DEFENDANTS EXCEPT WILLIAM MOREFORD, II**

9       Plaintiff alleges his Cause of Action against all defendants except William Moreford, II,

10  and each of them, as follows:

11      23. Plaintiff by this reference incorporates and makes a part hereof, as though fully set

12  forth herein at length, paragraphs 1 through 22, inclusive, of this complaint.

13      24. At all times herein mentioned, defendants engaged in the design, manufacturing,

14  assembling, testing, inspecting, packaging, instructing, warning, labeling, storing, advertising,

15  distributing and selling of firearms, including the Jennings/Bryco pistol, placing them in the

16  stream of interstate commerce, where they were sold for valuable consideration to the ultimate

17  users and consumers thereof.

18      25. The Jennings/Bryco pistol was dangerous, defective and unsafe, in that it failed to

19  perform as safely as an ordinary consumer would expect when used in an intended or

20  reasonably foreseeable manner, and included in its specific design features various inherent

21  risks of danger which outweighed the benefits of these specific design features, individually

22  and in combination, considering the gravity and likelihood of the dangers, and the financial

23  costs, mechanical feasibility and any adverse consequences of alternate design features,

24  producing foreseeable and unreasonable risks of mistake, accident and injury, without any

25  reasonable margin or allowance for error, including, but not limited to, error as to whether the

26  pistol was loaded or unloaded, and including, but not limited to, each of the following

27  particulars:

28

6

A.   The market for the pistol consisted of unsophisticated and untrained users.

B.   The pistol was sold without safety or operational training.

C.   The pistol was sold without proper, safe and/or adequate warnings.

D.   The pistol was sold without a trigger lock or device to deter unauthorized use.

E.   The pistol was sold without a "chamber loaded indicator" or "slide hold-open" to readily display whether or not the pistol was loaded.

F.   The pistol was designed so that the only way to determine whether it was loaded was to manually cycle the slide, and peer into the chamber to determine whether a cartridge was present, while manually holding the slide open.

G.   The pistol was designed so that the manual safety had to be moved from the "safe" to the "fire" position before the slide could be manually cycled to see if the pistol was loaded, making the pistol ready to fire.

H.   The pistol was designed so that manually cycling the slide could load a cartridge into the chamber, making the pistol ready to fire.

I.   The pistol was designed so that manually cycling the slide cocked the firing pin, making the pistol ready to fire.

J.   The pistol was designed without an exposed hammer or de-cocking lever that would allow decocking without "firing" the firing pin, which will discharge a loaded pistol.

K.   The pistol was designed so that the only way to decock the spring-loaded firing pin was to pull the trigger, which will discharge a loaded pistol.

L.   The pistol was designed without a "slide hold-open" or lock to secure the slide in the open position, so that the slide was only open for inspection while manually held open.

M.   The pistol was designed with "blow-back" rather than "locked" technology, using a higher tension recoil spring, which made it more difficult to manually hold the slide open to see if the pistol was loaded.

N.   The pistol was designed with a small and non-ergonomic slide which made it more difficult to manually grasp and hold the slide open to see if the pistol was loaded.

7

O.   The pistol was designed with closed rather than open slide technology, which provided a greatly reduced aperture through which the user could inspect the chamber to determine whether the pistol was loaded, while manually holding the slide open.

P.   The pistol was designed to make the presence of the pistol magazine a critical safety determination, as any check to see if the pistol was loaded required removing the manual safety, cycling the slide, cocking the firing pin, and pulling the trigger, which, if a loaded magazine was present in the pistol, would always discharge the pistol.

Q.   The pistol was designed without magazine followers or finger rests which would protrude from the handle of the pistol, making it more difficult to determine whether a magazine was present in the pistol.

R.   The pistol was designed and sold with two magazines, without visible markings alerting the user to the presence of a second magazine, increasing the likelihood of an erroneous determination that a magazine was not present in the pistol.

S.   The pistol was designed and sold with a chrome colored finish, one chrome colored magazine, and one black colored magazine, such that the black colored magazine in the handle of the chrome colored gun mimicked the appearance of an empty handle, increasing the likelihood of an erroneous determination that a magazine was not present in the pistol.

T.   The pistol was designed without a convenient button magazine release, which would provide a mechanical secondary check, increasing the likelihood of an erroneous determination that a magazine was not present in the pistol.

26.  Plaintiff was a bystander to the use of the Jennings/Bryco pistol.

27.  The Jennings/Bryco pistol was used and handled in a manner that was reasonably foreseeable by defendants and/or virtually certain to occur.

28.  Plaintiff was unaware and defendants were aware of the dangerous and defective nature of the Jennings/Bryco pistol.

29.  The Jennings/Bryco pistol was defective at the time it was placed on the market.

8

30. Defendants knew or reasonably should have known that the Jennings/Bryco pistol would be used without inspection for defects and that no reasonable inspection would disclose the defects inherent therein.

31. As a direct and proximate result of the foregoing, plaintiff has sustained damages as herein alleged.

WHEREFORE, plaintiff prays for judgment as hereinafter set forth.

## SECOND CAUSE OF ACTION - NEGLIGENCE

## AGAINST ALL DEFENDANTS

Plaintiff alleges his Cause of Action against defendants, and each of them, as follows:

32. Plaintiff by this reference incorporates and makes a part hereof, as though fully set forth herein at length, all of the previous allegations of this complaint.

33. At all times herein mentioned defendants owed a duty to abstain from injuring and to exercise due care toward the person, property and rights of plaintiff, as set forth in California Civil Code § 1708, and otherwise.

34. Defendants knew or should have known that their breach of duties owed plaintiff would result in his injuries and damages.

35. Defendants negligently and carelessly acted and/or omitted to act, in the manner and manners hereinabove alleged, at all times failing to exercise reasonable and ordinary care as to plaintiff.

36. As a direct and proximate result of the forgoing, plaintiff suffered damages as herein alleged.

WHEREFORE, plaintiff prays for judgment as hereinafter set forth.

## PRAYER

WHEREFORE, plaintiff prays for judgment against defendants, and each of them, as follows:

1. For general or non-economic damages according to proof;

2. For special or economic damages according to proof;

9

1    3. For costs of suit and attorneys' fees incurred;

2    4. For pre and post-judgment interest according to law;

3    5. For such other and further relief as the Court may deem just and proper

4 in the circumstances.

5 DATED: January 25, 2002                RICHARD R. RUGGIERI

6

7

8    By:_____
         Richard R. Ruggieri, Esq.
9        Attorneys for Plaintiff Brandon James
         Maxfield, a minor, by and through his
10       guardian ad litem, Susan Stansberry

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28                              10

**DECLARATION OF SERVICE**

I, the undersigned, hereby declare that I am employed at Courthouse Square, 1000 Fourth Street, Suite 785, San Rafael, CA 94901-3120; that I am over the age of eighteen and not a party to this cause; and that, on the date set forth below, I served true and correct copies of the document to which this declaration is appended, upon the parties to this action.

[X]    US MAIL - I placed them in the US Mail today, postage prepaid, addressed as follows:

[ ]    FEDERAL EXPRESS - I made a timely deposit with instructions for overnight delivery to the following individuals:

[ ]    HAND DELIVERY - I delivered them personally to the following addresses and/or individuals:

Joseph Hoffman, Esq.                    Fax: 415-461-9681
Weinberg, Hoffman & Casey
900 Larkspur Landing Circle
Suite 155
Larkspur, CA 94939
(Attorney for defendant Larry William Moreford, II)

Jay Twigg, Esq.                         Fax: 707-467-9068
Attorney At Law
520-A South State Street
Ukiah, CA 95482-4911
(Attorney for defendant Willits Pawn)

Mike Hewitt, Esq.                       Fax: 714-755-0195
Bruinsma & Hewitt
380 Clinton Avenue, Unit C
Costa Mesa, CA 92626
(Attorney for defendants Bryco Arms, B.L. Jennings, Inc., Bruce Jennings)

Peter Dixon, Esq.                       Fax: 415-434-0882
Lewis, D'Amato, et al.
1 Sansome Street, #1400
San Francisco, CA 94104
(Attorney for defendants Nationwide Sports Distributors, Inc., NSD West, Inc., Leslie Edelman)

Craig A. Livingston, Esq.               Fax: 415-364-6785
Schnader, Harrison, Segal & Lewis LLP
601 California St. Suite 1200
San Francisco, CA 94108-2817
(Attorney for defendant Anna Leah Jennings)

I declare under penalty of perjury that the foregoing is true and correct. Executed at San Rafael, California.

Dated: 1/30/02

_____
Richard R. Ruggieri

max1.d29

ENDORSED
FILED
ALAMEDA COUNTY

MAR 2 0 2002

CLERK OF THE SUPERIOR COURT
by Columbia Littleberry, Deputy

1 | RICHARD R. RUGGIERI, ESQ. (Bar No. 087670)
   Courthouse Square
2 | 1000 Fourth Street, Suite 785
   San Rafael, CA  94901-3120
3 | Tel: 415-457-9382
   Fax: 415-457-9399

4

Attorneys for plaintiff Brandon James
5 | Maxfield, a minor, by and through his
   guardian ad litem, Susan Stansberry

6

7

8 |          IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

9 |             IN AND FOR THE COUNTY OF ALAMEDA

10 |                   OAKLAND DIVISION

11 | BRANDON JAMES MAXFIELD, A              )
    MINOR, BY AND THROUGH HIS             )
12 | GUARDIAN AD LITEM, SUSAN             )
    STANSBERRY                            )   No. 2002-044620
13 |                                       )
             Plaintiff(s),                )
14 | vs.                                   )   COMPLAINT TO SET ASIDE
                                          )   FRAUDULENT TRANSFER, FOR
15 | BRYCO ARMS, B. L. JENNINGS, INC.,    )   INJUNCTIVE RELIEF, IMPOSITION
    BRUCE LEE JENNINGS, JANICE KAY        )   OF CONSTRUCTIVE TRUST, AND
16 | JENNINGS, ANNA LEAH JENNINGS,        )   FOR DAMAGES
    RKB INVESTMENTS, BRUCE LEE           )
17 | JENNINGS AS TRUSTEE FOR THE          )
    RHONDA D. JENNINGS CALIFORNIA        )
18 | TRUST, JANICE KAY JENNINGS AS        )
    TRUSTEE FOR THE RHONDA D.            )
19 | JENNINGS CALIFORNIA TRUST,           )
    BRUCE LEE JENNINGS AS TRUSTEE         )
20 | FOR THE KIMBERLY K. JENNINGS         )
    CALIFORNIA TRUST, JANICE KAY         )
21 | JENNINGS AS TRUSTEE FOR THE          )
    KIMBERLY K. JENNINGS                  )
22 | CALIFORNIA TRUST, BRUCE LEE          )
    JENNINGS AS TRUSTEE FOR THE          )
23 | BRADLEY A. JENNINGS CALIFORNIA       )
    TRUST, JANICE KAY JENNINGS AS         )
24 | TRUSTEE FOR THE BRADLEY A.           )
    JENNINGS CALIFORNIA TRUST,            )
25 | AND DOES 1-300, INCLUSIVE            )
               Defendant(s).              )
26 | _____ )

27

28

1

COMPLAINT TO SET ASIDE FRAUDULENT TRANSFER,
FOR INJUNCTIVE RELIEF, IMPOSITION OF CONSTRUCTIVE TRUST, AND FOR DAMAGES

# EXHIBIT B

03ID00615/

1    As and for his complaint against defendants, and each of them, plaintiff Brandon James

2   Maxfield, a minor, by and through his guardian ad litem, Susan Stansberry, alleges his cause of

3   action as follows:

4        1. Plaintiff Brandon James Maxfield is a minor residing in the State of California.

5        2. Susan Stansberry is the duly appointed Guardian Ad Litem for Brandon James

6   Maxfield in this action, and a resident of the State of California.

7        3. The true names and capacities of defendants Does 1-300, inclusive, are presently

8   unknown to plaintiff, who has therefore sued them by such fictitious names, and prays leave to

9   amend to set forth their true names and capacities when these have been finally ascertained.

10       4. Defendants Bruce Lee Jennings, Janice Jennings, and Anna Leah Jennings are

11  individuals.  Bruce Lee Jennings and Janice Kay Jennings are co-trustees of trusts established

12  in the names of their children, as the Rhonda D. Jennings California Trust, Kimberly K.

13  Jennings California Trust, and Bradley A. Jennings California Trust.  These trusts are the

14  general partners in defendant RKB Investments, a general partnership.  Defendants Bryco Arm

15  and B. L. Jennings, Inc. are Nevada corporations, solely owned by defendants Janice Jennings

16  and Bruce Jennings, respectively.  All said defendants reside and/or conduct business within the

17  State of California, and are members of a partnership and/or joint enterprise, and/or the alter

18  egos, each of the other, as to which they have combined their skills, resources, properties and

19  knowledge, subject to an agreement and community of interest, sharing of profits and losses,

20  and joint right of control, in a common business enterprise, to make and retain profits from the

21  manufacture and sale of low-priced, low-quality firearms, by avoiding the internalization and/o

22  realization of the costs of injuries, lawsuits and products liability obligations otherwise

23  chargeable in economics and law against said profits.

24       5. On April 6, 1994, plaintiff was injured by the inadvertent discharge of a firearm

25  designed, manufactured, assembled, marketed, and sold by defendants herein.

26

27

28

2

COMPLAINT TO SET ASIDE FRAUDULENT TRANSFER,
FOR INJUNCTIVE RELIEF, IMPOSITION OF CONSTRUCTIVE TRUST, AND FOR DAMAGES

03ID00615/

1    6. On May 23, 2001, plaintiff filed an action in the Alameda County Superior Court,

2  docket no. 841636-4, against defendants herein, and each of them, for the injuries and damages

3  sustained on April 6, 1994, including economic damages in excess of $10 million, which action

4  is currently pending and has not yet been reduced to judgment.

5    7. Plaintiff's said action constituted a "claim" against defendants, within the meaning o

6  the Uniform Fraudulent Transfer Act, California Civil Code § 3439.01, and otherwise.

7    8. Since approximately October 11, 1991, defendant RKB Investments has been the

8  record owner of an estate in real property, which plaintiff is informed and believes has a fair

9  market value of several million dollars, and which is located at 10 Shoreview, Newport Shores

10  Orange County, California, including, but not limited to, Lot 50 of Tract Map 14063 on the

11  map filed in Book 670, Pages 23 through 29, inclusive, of Miscellaneous maps, Records of

12  Orange County, California, hereinafter referred to as the "subject real property."

13    9. On or about February 27, 2002, defendant RKB Investments, acting by and through

14  defendant Janice Jennings, transferred all right, title and interest in the subject real property to

15  defendant Anna Leah Jennings, without consideration, as evidenced by a grant deed recorded

16  that day in the official Records of the Clerk-Recorder, County of Orange, document

17  200020168222, hereinafter referred to as "the transfer."

18    10. The transfer was made with an actual intent to hinder, delay or defraud defendants

19  creditors, including plaintiff herein, in the collection of claims against defendants.

20    11. The transfer was made without receiving a reasonably equivalent value in

21  exchange, and defendants (a) were engaged or about to engage in a business or transaction for

22  which their remaining assets were unreasonably small in relation to the business or transaction

23  (b) intended to incur, and/or believed or reasonably should have believed that they would incu

24  debts beyond their ability to pay as they came due, and/or (c) were insolvent at the time of, or

25  became insolvent as a result of, the said transfer.

26

27

28

3

03ID00615/

1    12.  Plaintiff is informed and believes that defendant Anna Leah Jennings received and
2  accepted the transfer with knowledge of defendants' fraudulent intent.

3    13.  Plaintiff is informed and believes that defendants, and each of them, agreed and
4  knowingly and willfully conspired, between and among themselves, to execute, undertake,
5  perform and receive the fraudulent transfer complained of herein, and completed all acts
6  alleged in furtherance of said conspiracy.

7    14.  Plaintiff is informed and believes that defendants, and each of them, knew of
8  plaintiff's claim and knew that plaintiff's claim could only be satisfied out of the subject real
9  property, and intentionally, willfully, fraudulently, and maliciously acted and omitted to act as
10  herein alleged, in conscious disregard of the rights of plaintiff, to defraud and oppress plaintiff
11  herein, so as to subject themselves to liability for punitive and exemplary damages, in an
12  amount to be determined sufficient to punish and deter such conduct.

13    15.  As a direct and proximate result of the said conduct and activities of defendants,
14  and each of them, plaintiff has and will suffer general damages in excess of the jurisdictional
15  limits of this Court, the full nature and extent of which are presently unknown to plaintiff, who
16  therefore requests leave to amend this complaint to conform to proof at the time of trial.

17    16.  As a direct and proximate result of the said conduct and activities of defendants,
18  and each of them, plaintiff has and will suffer special damages in excess of the jurisdictional
19  limits of this Court, the full nature and extent of which are presently unknown to plaintiff, who
20  therefore requests leave to amend this complaint to conform to proof at the time of trial.

21    17.  As a direct and proximate result of the said conduct and activities of defendants,
22  and each of them, plaintiff has and will incur attorneys fees, costs and expenses in excess of
23  the jurisdictional limits of this Court, the full nature and extent of which are presently unknown
24  to plaintiff, who therefore requests leave to amend this complaint to conform to proof at the
25  time of trial.

26    WHEREFORE, plaintiff prays for judgment as hereinafter set forth.

27

28

4

COMPLAINT TO SET ASIDE FRAUDULENT TRANSFER,
FOR INJUNCTIVE RELIEF, IMPOSITION OF CONSTRUCTIVE TRUST, AND FOR DAMAGES

**PRAYER**

WHEREFORE, plaintiff prays for judgment against defendants as follows:

1. That the transfer from defendant RKB Investments to defendant Anna Leah Jennings be set aside and declared void as to the plaintiff herein to the extent necessary to satisfy plaintiff's claim, plus legal interest thereon;

2. That the subject real property in the hands of defendant Anna Leah Jennings be attached in accordance with the provisions of the California Code of Civil procedure;

3. That the subject real property in the hands of defendant Anna Leah Jennings be deemed to be held in constructive trust for plaintiff, subject to all fiduciary obligations arising therefrom;

4. That defendants be restrained from selling, transferring, conveying, disposing of, encumbering, hypothecating, or wasting the subject real property until such time as plaintiff's claim is reduced to judgment and fully satisfied;

5. That the judgment herein be declared a lien on the property transferred;

6. For general damages according to proof;

7. For special damages according to proof;

8. For punitive and exemplary damages;

9. For costs of suit and attorneys' fees incurred;

10. For pre and post-judgment interest according to law;

11. For such other and further relief as the Court may deem just and proper in the circumstances.

DATED: March 20, 2002

RICHARD R. RUGGIERI

By:_____

Richard R. Ruggieri, Esq.
Attorneys for plaintiff Brandon James
Maxfield, a minor, by and through his
guardian ad litem, Susan Stansberry

5

03ID00615/.

## DECLARATION OF SERVICE

I, the undersigned, hereby declare that I am employed at Courthouse Square, 1000 Fourth Street, Suite 785, San Rafael, CA  94901-3120; that I am over the age of eighteen and not a party to this cause; and that, on the date set forth below, I served true and correct copies of the document to which this declaration is appended, upon the parties to this action.

[ ]    US MAIL - I placed them in the US Mail today, postage prepaid, addressed as follows:

[ ]    FEDERAL EXPRESS - I made a timely deposit with instructions for overnight delivery to the following individuals:

[ ]    HAND DELIVERY - I delivered them personally to the following addresses and/or individuals:

Joseph Hoffman, Esq.                    Fax: 415-461-9681
Weinberg, Hoffman & Casey
900 Larkspur Landing Circle
Suite 155

Larkspur, CA  94939
(Attorney for defendant Larry William Moreford, II)

Jay Twigg, Esq.                         Fax: 707-467-9068
Attorney At Law
520-A South State Street
Ukiah, CA  95482-4911
(Attorney for defendant Willits Pawn)

Mike Hewitt, Esq.                       Fax: 714-755-0195
Bruinsma & Hewitt
380 Clinton Avenue, Unit C
Costa Mesa, CA  92626
(Attorney for defendants Bryco Arms, B.L. Jennings, Inc., Bruce Jennings)

Peter Dixon, Esq.                       Fax: 415-434-0882
Lewis, D'Amato, et al.
1 Sansome Street, #1400
San Francisco, CA  94104
(Attorney for defendants Nationwide Sports Distributors, Inc., NSD West, Inc., Leslie Edelman

Craig A. Livingston, Esq.               Fax: 415-364-6785
Schnader, Harrison, Segal & Lewis LLP
601 California St. Suite 1200
San Francisco, CA  94108-2817
(Attorney for defendant Anna Leah Jennings)

I declare under penalty of perjury that the foregoing is true and correct.  Executed at San Rafael, California.

Dated: _____        _____
                                         Richard R. Ruggieri

03ID00615/